**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Carmen D. Collazo-Edwards,** | ) | **Civil Action No.:**_____ 4:24-cv-7245-JD |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Carmen D. Collazo-Edwards, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8.     Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9.     Plaintiff, Carmen D. Collazo-Edwards, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.    Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14.    The Plaintiff alleges that Defendant repeatedly failed to block, delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes.  Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

3

## FACTUAL ALLEGATIONS

15.     In or around May of 2017, Plaintiff discovered she had been the victim of identity theft.  On May 24, 2017, Plaintiff filed a police report with the Florence County Sheriff's Office specifically stating her bank account and credit card accounts had been fraudulently used by an unknown person.  Plaintiff also notified her bank and the credit card companies of the fraud.

16.     In June of 2023, Plaintiff applied for a new apartment with Habitat 2000, LLC, but her request was denied.  Plaintiff is on a fixed income and the apartment complex she applied to provided larger apartments at a lesser cost than she currently pays in housing each month.

17.     On or about June 13, 2023, Plaintiff received an Adverse Action Notice from Habitat 2000, LLC, stating they were unable to approve her application for housing due to a derogatory credit history based on her Equifax consumer report.

18.     Thereafter, on or about July 10, 2023, Plaintiff obtained a copy of her Equifax credit report and discovered that several accounts belonging to her that had been fraudulently taken over and used without her knowledge or permission were reporting on her credit.

19.     On or about October 13, 2023, Plaintiff sent a written dispute letter to Equifax ("First Dispute"). In her letter, Plaintiff informed Defendant that she had been the victim of identity theft and fraud, and that she had been denied an apartment because of accounts being inaccurately reported on her credit.  Plaintiff specifically disputed the reporting of four accounts: Bank of America, Account #*2306, JPMCB – Card Services, Account #0191, B&T, Account #6412, and BB&T, Account #4366.  Plaintiff stated these four

accounts were her accounts, but they had been fraudulently taken over and used without her permission. Plaintiff requested that all of these accounts be deleted from her credit report. Plaintiff included a copy of the police report she filed with her dispute letter and asked that a fraud alert be added to her credit file. In addition, Plaintiff provided her full social security number, date of birth, and address.

20. On or about October 18, 2023, as part of Defendant's plan and scheme to avoid its obligations under the FCRA, Defendant sent Plaintiff a letter claiming it was unable to locate a credit file in its database with the identification information Plaintiff provided and requested Plaintiff send additional information to prove her identify and her current address.

21. That same day, Defendant sent Plaintiff a second letter stating it had received her request to block certain information appearing on Plaintiff's Equifax credit file, but advising her that it would not be blocking the information requested. Defendant also advised Plaintiff that it would be "contacting each company that provided the disputed information to verify the information on [her] behalf." Finally, Defendant informed Plaintiff that she would receive the results of this investigation within 30 days.

22. Clearly, as Defendant was able to locate Plaintiff's Equifax credit file in order to refuse to block the fraudulent information appearing on her credit report, Defendant's claim that it could not locate Plaintiff's credit file was completely untrue.

23. Despite Defendant's representation on October 18, 2023, that it would be investigating Plaintiff's disputes, Defendant never performed any investigation of Plaintiff's First Dispute and never provided any investigation results to Plaintiff.

24. On or about January 31, 2024, Plaintiff sent a second written dispute letter to

Equifax ("Second Dispute"). In this letter, Plaintiff again told Defendant that she had been the victim of identity theft and, that because of fraudulent accounts appearing on her credit report, she had been turned down for an apartment. Plaintiff disputed the Bank of America, JPMCB-Card Services, and two Truist Bank accounts reporting on her credit report as having been fraudulently taken over and used without her knowledge or permission, and requested they be deleted from her credit report. Plaintiff included another copy of the police report she filed with her dispute letter.

25. On or about February 7, 2024, Defendant sent Plaintiff a letter again stating it had received her request to block certain information appearing on Plaintiff's Equifax credit file, but advising her that it would not be blocking the information requested. Defendant again advised Plaintiff that it would be "contacting each company that provided the disputed information to verify the information on [her] behalf." Finally, Defendant informed Plaintiff that she would receive the results of this investigation within 30 days.

26. That same day Defendant sent Plaintiff a second letter stating that Plaintiff could add a fraud alert to her Equifax credit file at no charge, and requesting that Plaintiff resubmit her disputes along with documents verifying her address and identity.

27. At the time Defendant requested documents verifying her address and identity, Defendant already had all of the information it needed in order to investigate Plaintiff's disputes.

28. Defendant never investigated Plaintiff's disputes as it stated it would in the February 7, 2024, letter.

29. Plaintiff never received any investigation results following her Second Dispute

letter to Defendant.

30.    On or about February 26, 2024, Defendant forwarded Plaintiff a letter including a copy of "Remedying the Effects of Identity Theft" prepared by the Consumer Financial Protection Bureau.

31.    Completely frustrated by Defendant's failure to respond to her two previous disputes, on or about April 15, 2024, Plaintiff sent a third written dispute letter to Equifax ("Third Dispute").  In this Third Dispute, Plaintiff informed Defendant that the only response she had received from Defendant to her previous disputes was a letter providing information on "Remedying the Effects of Identity Theft."  Once again, Plaintiff informed Defendant she was denied a new apartment due to several fraudulent accounts appearing on her credit report.  Plaintiff asked Defendant to confirm a fraud alert had been added to her credit file and asked that the fraudulently taken over accounts be deleted from her credit reports. Plaintiff provided a third copy of the police report with her letter to Defendant.

32.    On or about April 24, 2024, Defendant sent Plaintiff the same letter stating it had received her request to block certain information appearing on Plaintiff's Equifax credit file, but advising her that it would not be blocking the information requested.  Defendant again advised Plaintiff that it would be "contacting each company that provided the disputed information to verify the information on [her] behalf."  Finally, Defendant informed Plaintiff that she would receive the results of this investigation within 30 days.

33.    That same day, Defendant also sent Plaintiff the same form letter claiming it was unable to locate a credit file in its database with the identification information Plaintiff had provided and requesting Plaintiff send it documents verifying her identity and current

address.

34.   In response to Defendant's request for proof of identity and address, on or about May 13, 2024, Plaintiff mailed Defendant a copy of her driver's license, Social Security card, a BlueCross BlueShield statement reflecting her address, a copy of her Third Dispute letter, and a copy of Defendant's letter requesting such information.

35.   Plaintiff never received any response from Defendant to her Third Dispute letter.

36.   Defendant never investigated any of Plaintiff's disputes.

37.   To date, Defendant continues to refuse to block the fraudulent information from Plaintiff's Equifax credit file, and continues to incorrectly report multiple fraudulent accounts as belonging to Plaintiff.

38.   The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

39.   Equifax's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## <u>COUNT ONE</u>
(Fair Credit Reporting Act)

40.   The Plaintiff adopts the averments and allegations of paragraphs 15 through 39 hereinbefore as if fully set forth herein.

41.   Defendant maintains and distributes credit data files on the Plaintiff's credit.

Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

42.     Defendant repeatedly and negligently failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

43.     Defendant repeatedly and negligently failed to conduct a reasonable reinvestigation of Plaintiff's disputes of the accounts fraudulently taken over and never provided Plaintiff with any investigation results.

44.     Defendant repeatedly and negligently refused to block information reporting on Plaintiff's credit file despite receipt of a valid police report.

45.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of housing, loss of access to credit, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

46.     In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

47.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

48.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 47 hereinbefore as if fully set forth herein.

49.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

50.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

51.     Defendant willfully failed and/or refused to conduct a reasonable reinvestigation of Plaintiff's disputes of the accounts fraudulently taken over and never provided Plaintiff with any investigation results.

52.     Defendant willfully refused to block information reporting on Plaintiff's credit file despite receipt of a valid police report.

53.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

54.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of housing, loss of access to credit,

anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment, and mental anguish. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

55.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

56.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.   Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

57.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.     For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

11

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169